OPINION
{¶ 1} Appellant, Ms. Sophie R. Homan, appeals from the November 3, 2006 judgment entry of the Portage County Municipal Court, Kent Division, which found her guilty of assault and sentenced her accordingly. For the following reasons, we affirm.
 {¶ 2} Substantive and Procedural History
 {¶ 3} On May 15, 2006, a complaint was filed against appellant, Ms. Sophie R. Homan ("Ms. Homan"), charging her with one count of assault, a misdemeanor of the first degree, in violation of R.C. 2903.13(A). The charge raised against Ms. Homan *Page 2 
stems from a bar fight in which she allegedly attacked the bartenders of Europe Gyro, a restaurant located in Kent, Ohio. The incident occurred on the night of May 14, 2006, at approximately 2:30 a.m. Ms. Homan entered a plea of not guilty on May 18, 2006, and the case proceeded to a bench trial on November 2, 2006.
 {¶ 4} The state presented the evidence and testimony of three eyewitnesses, including the alleged victim and on-duty bartender, Ms. Monica Pickering ("Ms. Pickering"), and two eyewitness patrons, Mr. Kenny Kelly ("Mr. Kelly"), and Ms. Nicole Jaap ("Ms. Jaap").[1] The defense presented the testimony of two witnesses, Ms. Homan, and her fiancé, Mr. Matthew Norris ("Mr. Norris").
 {¶ 5} The court issued a judgment entry on November 3, 2006, which found Ms. Homan guilty of one count of assault, a first degree misdemeanor in violation of R.C. 2903.13(A). Ms. Homan was then sentenced to serve one hundred and eighty days in jail, with one hundred and seventy-seven days suspended, and fined $1,000 plus costs, with $850 suspended. The sentence was then stayed pending appeal.
 {¶ 6} On November 30, 2006, Ms. Homan filed her appeal and now raises the following assignment of error:
 {¶ 7} "The court erred in finding the defendant guilty of assault."
 {¶ 8} Standard of Review
 {¶ 9} In her sole assignment of error, Ms. Homan raises the issue of whether her conviction for assault is against the manifest weight of the evidence.
 {¶ 10} "Manifest weight of the evidence raises a factual issue and involves `the inclination of the greater amount of credible evidence.'"State v. Grayson, 11th Dist. No. *Page 3 
2006-L-153, 2007-Ohio-1772, ¶ 30, citing State v. Thompkins,78 Ohio St.3d 380, 387. "Although the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to determine, State v. Thomas (1982), 70 Ohio St. 2d 79, at syllabus, when reviewing a manifest weight challenge, the appellate court sits as the `thirteenth juror.'" Id., citing Thompkins at 387. (Citation omitted.)
 {¶ 11} "As such, the reviewing court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, `in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed * * *.'" Id., citingThompkins at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175.
 {¶ 12} "The reviewing court may exercise its discretionary power to reverse a judgment as being against the manifest weight of the evidence only in `those extraordinary cases where, on the evidence and theories presented, and taken in a light most favorable to the prosecution, no reasonable [trier of fact] could have found the defendant guilty.'" Id., citing Thompkins at 387, citing State v. Bradford (Nov. 7, 1988), 5th Dist. No. CA-7522, 1988 Ohio App. LEXIS 4576, 4.
 {¶ 13} Manifest Weight
 {¶ 14} Ms. Homan contends that her conviction for assault is against the manifest weight of the evidence. Specifically, she argues that since there was a conflict in testimony between her own testimony and the state's witnesses that the court erred in finding her guilty. For the following reasons, we affirm.
 {¶ 15} A review of the record reveals that indeed, a conflict of testimony exists between Ms. Homan and the victim, Ms. Pickering, and the two eyewitness patrons, Mr. *Page 4 
Kelly, and Ms. Jaap. Specifically, the state's witnesses presented testimony that they observed Ms. Homan punch Ms. Pickering. Ms. Pickering was bartending on the night of the incident. The restaurant was crowded as it was a busy night, and at least fifty people were present.
 {¶ 16} Around the last call of the night, Ms. Pickering testified that Ms. Homan approached the bar and requested six or seven shots of alcohol. Ms. Pickering responded that she would need to see seven I.D.'s before she could serve the shots. Within minutes, Ms. Homan returned, albeit with only three I.D.'s, and Ms. Pickering told her that she could only serve her three shots. Ms. Homan became visibly upset, swore at Ms. Pickering and walked away.
 {¶ 17} At last call, which was approximately 2:15 a.m. or 2:30 a.m. "bar time," Ms. Pickering went around the bar and started to collect glasses from patrons, informing them that it was time for last call. Ms. Homan "got in her face," again requested the seven shots and verbally harassed Ms. Pickering. The next thing Ms. Pickering remembers is being punched by Ms. Homan's closed fist in the face. Ms. Pickering hit her in response and both women fell.
 {¶ 18} Ms. Pickering then asked another bartender, who was off-duty, Ms. Danielle Taseric ("Ms. Taseric"), for help. Ms. Taseric, along with a few of the regular patrons escorted Ms. Homan outside since she refused to leave. Ms. Homan then hit Ms. Taseric in the face and a fight ensued between them. Ms. Pickering broke up the fight, grabbed Ms. Homan's purse to locate her I.D., and called the police. Ms. Pickering suffered a black eye, scratches on her arm, and bruises. She also testified that Ms. Homan was "visibly intoxicated and falling all over the place." *Page 5 
 {¶ 19} Mr. Kelly, a regular patron, was playing cards with some companions when the fight erupted. Mr. Kelly identified Ms. Homan as the lady who punched Ms. Pickering and testified that after this occurred a large fight ensued with multiple people involved. Mr. Kelly did not see Ms. Taseric strike anyone, nor did he see her strike anyone with her shoes.
 {¶ 20} Ms. Jaap, also a regular patron, testified she was eating a piece of pizza when she observed Ms. Homan push Ms. Pickering and then swing at her after Ms. Pickering tried to take her glass. Both Mr. Kelly and Ms. Jaap did not make statements with the police until sometime after the incident and only upon Ms. Pickering's request who was told by the police to identify eyewitnesses from the incident.
 {¶ 21} Mr. Norris, Ms. Homan's fiancé, then testified for the defense. Both he and Ms. Homan were visiting from New York for his brother's graduation. He had consumed about six to eight drinks that night, which consisted of one shot of tequila and the remainder beer. He, Ms. Homan, his brother, and his brother's girlfriend went to Europe Gyro because food was served until 3:30 a.m. and his brother was hungry. Mr. Norris did not observe the incident because he was in the restroom. When he came out, he saw Ms. Homan lying on the ground, bleeding. He comforted her until the police came to the scene and arrested her. He was present for Ms. Homan's interview with Officer Ennemoser, who noted in her report that Ms. Homan was extremely intoxicated. Mr. Norris testified that Ms. Homan was not extremely intoxicated, but rather, was extremely upset, which is why she was unsteady on her feet and crying.
 {¶ 22} Ms. Homan, an eighth grade science teacher, then testified in her defense. She testified that she had consumed about four alcoholic beverages, which *Page 6 
consisted of a mixed vodka drink and three beers, prior to visiting Europe Gyro. She testified that she was talking to her brother's girlfriend, Maria, when a girl approached her and said, "Stop." The girl then asked her to leave the bar. Ms. Homan was under the impression that the girl misunderstood their discussion and she replied that she did not want to leave the bar. The girl, who Ms. Homan tentatively identified as Ms. Taseric, took her shoe off and hit Ms. Homan on the nose. Ms. Homan was then attacked by two other people who hit her and backed her in the corner. She suffered two fractures in the noise, a bump on her head, and a contusion on the side of her face. However, the only injury she relayed to the police was for a scratch on her nose. Ms. Homan denied ever getting into a verbal confrontation or punching Ms. Pickering. Ms. Homan also denied the first discussion with Ms. Pickering in which she approached Ms. Pickering at the bar and attempted to purchase the seven shots.
 {¶ 23} A review of the testimony of the participants and witnesses to this alcohol-fueled brawl reveals that the manifest weight of the evidence weighs heavily in a finding of guilt. There is nothing to suggest in this case that such a manifest miscarriage of justice has occurred or that the trier of fact lost its way. Specifically, the state presented the testimony of three sober individuals who, although their testimony conflicts in minor details since they observed different portions of the incident, observed Ms. Homan punch Ms. Pickering. Ms. Homan's testimony, where she denies being even a participant, remains uncorroborated by Mr. Norris's testimony, since he failed to view the event. Thus, the matter turns on the credibility of the witnesses.
 {¶ 24} "It is well-settled that when assessing the credibility of witnesses, `[t]he choice between credible witnesses and their conflicting testimony rests solely with the *Page 7 
finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.'" State v. McKinney, 11th Dist. No. 2006-L-169, 2007-Ohio-3389, ¶ 49, citing Grayson at ¶ 31, citingState v. Awan (1986), 22 Ohio St.3d 120, 123. "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." Id. citing Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 Ohio App. LEXIS 1073, 8. "If the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict." Id. "Moreover, in a criminal bench trial, a reviewing court will not reverse a conviction `where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt.'" Grayson at ¶ 31, citing State v.Arnold (Sept. 7, 1999), 12th Dist. No. CA99-02-026, 1999 Ohio App. LEXIS 4159, 10.
 {¶ 25} Based on our review of the entire record and weighing the evidence and all reasonable inferences, it is our view that the trier of fact did not lose its way or create such a manifest miscarriage of justice that Ms. Homan's conviction must be reversed and a new trial ordered.
 {¶ 26} Ms. Homan's assignment of error lacks merit.
 {¶ 27} The judgment of the Portage County Municipal Court, Kent Division, is affirmed.
DIANE V. GRENDELL, J., COLLEEN MARY OTOOLE, J., concur.
[1] The state also entered into evidence four photographs, which were not considered in this appeal since there was a failure to complete the record. *Page 1